Lisa Faye Petak (CA 300914)
lpetak@kellerrohrback.com
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Phone (805) 456-1496, Fax (805) 456-1497

Mark A. Griffin (WSBA 16296)
mgriffin@kellerrohrback.com
Laura R. Gerber (WSBA 34981)
lgerber@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Phone: (206) 623-1900, Fax (206) 623-3384

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE RUDY REYES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JPAY, INC.; SUNRISE BANKS NATIONAL ASSOCIATION; AND PRAXELL, INC.,<br><br>Defendants. | No. 2:18-cv-00315-R-MRW<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**The Honorable Manuel Real**<br>**Date: June 4, 2018**<br>**Time: 10:00 a.m.**<br>**Place: Courtroom 880, 8th Floor** |

# TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................1

II.    LEGAL STANDARD FOR CLASS CERTIFICATION............................4

III.   THE PROPOSED CLASS.....................................................................5

IV.    ARGUMENT.......................................................................................6

      A.    The Proposed Class and Subclass Meet the Requirements of
              Rule 23(a): Numerosity, Commonality, Typicality, and
              Adequate Representation.....................................................6

            1.    The Class and Subclass are Sufficiently Numerous to
                   Render Joinder Impracticable. .................................6

            2.    Common Questions of Law and Fact Exist. ............................7

            3.    Plaintiff's Claims Are Typical of The Claims of All Class
                   Members..................................................................10

            4.    Plaintiff Will Adequately Protect the Interests of the
                   Class, and Counsel are Qualified to Litigate this Action........11

      A.    The Class Is Maintainable Under Rule 23(b)(3). .............................14

            1.    Questions of Law or Fact Common to Class Members
                   Predominate Over Any Questions Affecting Only
                     Individual Members...................................................15

             2.    Class Treatment Is Superior to Other Methods of
                   Adjudicating this Controversy. .................................20

      C.    The Class is Maintainable Under Rule 23(b)(2). .............................24

I.     CONCLUSION...........................................................................25

## TABLE OF AUTHORITIES

**Cases**

*In re Activision Sec. Litig.*,
621 F. Supp. 415 (N.D. Cal. 1985) ............................................................ 15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................... 3, 15, 22, 25

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) ........................................................................... 7

*Andrews v. Plains All American Pipeline, L.P.*,
No. 15-4113 PSG, ECF No. 257 (C.D. Cal. Feb. 28, 2017) ............................. 14, 15

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005) ................................................. 8, 11, 19

*Ballard v. Branch Banking & Tr. Co.*,
284 F.R.D. 9 (D.D.C. 2012) ............................................................... 23

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ............................................................. 12

*In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*,
78 F.R.D. 622 (W.D. Wash. 1978) ........................................................ 23

*Brown v. Legal Found. Of Washington*,
538 U.S. 216 (2003) ......................................................................... 19

*Brown v. Stored Value Cards, Inc.*,
3:15-cv-01370-MO (D. Or.) ............................................................ 13, 24

*Brown v. Stored Value Cards, Inc.*,
3:15-cv-01370-MO, ECF No. 136 (D. Or. June 7, 2017) ................................. 20

*Brown v. Wells Fargo & Co.*,
No. CIV. 11-1362 ........................................................................ 23, 24

*Bultemeyer v. Fitness All., LLC*,
No. CV–12–2619–PHX–LOA, 2014 WL 667585 (D. Ariz. Feb. 20, 2014) ........................................................................................................ 16

*Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ................................................................ 24

*Chicago, B. & Q.R. Co. v. Chicago*,
166 U.S. 226 (1897) .................................................................. 19

*Clemmer v. Key Bank Nat'l Ass'n*,
539 F.3d 349 (6th Cir. 2008) ..................................................... 16

*Coleman through Bunn v. D.C.*,
306 F.R.D. 68 (D. D.C. 2015) .................................................... 18

*In re Cooper Co. Inc., Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ................................................ 6

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008) .................................................................... 6

*Daye v. Cmty. Fin. Serv. Centers, LLC*,
313 F.R.D. 147 (D. N.M. 2016) .................................................. 16

*de la Torre v. CashCall, Inc.*,
56 F. Supp. 3d 1073 (N.D. Cal.) ................................................ 24

*Douglas R. Bigelow Tr. v. United States*,
97 Fed. Cl. 674 (2011) ................................................................ 9

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........................................ 4, 7, 10, 12

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ............................................ 10, 12

*Friedman v. 24 Hour Fitness USA, Inc.*,
No. CV 06-6282 AHM (CTX), 2009 WL 2711956 (C.D. Cal. Aug. 25, 2009) ........................................................................................................ 18

*Garbaccio v. St. Joseph's Hosp. & Medical Ctr.*,
No. 2:16-cv-02740-JMV-JBC (D. N.J. Mar. 6, 2018) .......................... 14

*Gen. Tel. Co. of SW. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................ 4, 10

*Haley v. Medtronic, Inc.*,
  169 F.R.D. 643 (C.D. Cal. 1996) .............................................................. 21

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................... *passim*

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................... 10

*Horne v. Dep't of Agric.*,
  135 S. Ct. 2419 (2015) ............................................................................ 19

*Jabbari v. Wells Fargo & Co.*,
  No. 3:15-cv-02159-VC (N.D. Cal. Jul. 8, 2017) ....................................... 14

*Jordan v. Freedom Nat'l Ins. Servs. Inc.*,
  No. CV-16-00362-PHX-DLR, 2016 WL 5363752 (D. Ariz. Sept. 26,
  2016) ......................................................................................................... 9

*Kinder v. Nw. Bank*,
  278 F.R.D. 176 (W.D. Mich. 2011) .......................................................... 21

*Lynch v. Rank*,
  604 F. Supp. 30 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984),
  *opinion amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985) ......................... 6

*Michery v. Ford Motor Co.*,
  650 F. App'x 338 (9th Cir. 2016) ............................................................... 6

*Moeller v. Taco Bell Corp.*,
  220 F.R.D. 604 (N.D. Cal. 2004) .............................................................. 13

*In re NetSol Techs., Inc. Sec. Litig.*,
  No. CV 14-5787 PA, 2016 WL 7496724 (C.D. Cal. July 1, 2016) .............. 6

*O'Donovan v. CashCall, Inc.*,
  278 F.R.D. 479 (N.D. Cal. 2011) ........................................... 9, 11, 16, 17

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ........................................... 7, 10, 18, 25

*Perez–Funez v. Dist. Dir., I.N.S.*,
   611 F. Supp. 990 (C.D. Cal. 1984) ............................................................. 6

*Reichert v. Keefe Commissary*,
   3:17-cv-05848-RBL (W.D. Wash.) ........................................................... 13

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ........................................................ 7, 24, 25

*Sanchez v. City of Fresno*,
   914 F. Supp. 2d 1079 (E.D. Cal. 2012) ................................................... 18

*Sanzone v. Mercy Health*,
   No 4:16-cv-923-CDP (E.D. Mo. Aug. 4, 2016) ...................................... 14

*Shelby v. Two Jinns, Inc.*,
   No. CV15-3794-ABGJSX, 2017 WL 6347090 (C.D. Cal. Aug. 2, 2017) 9, 11, 18, 21

*St. Bernard Par. Gov't v. United States*,
   126 Fed. Cl. 707 (2016), *rev'd on other grounds*, No. 2016-2301, 2018
   WL 1882913 (Fed. Cir. Apr. 20, 2018) ................................................... 18

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................... 10

*In re STEC Inc. Sec. Litig.*,
   No. CV 09-8536-JVS ................................................................................. 6

*In re Syncor ERISA Litig.*,
   227 F.R.D. 338 (C.D. Cal. 2005) ............................................................ 14

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ................................................................... 7

*In re US Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013) *cert. denied sub nom. US Foods, Inc. v.
   Catholic Healthcare W.*, 134 S. Ct. 1938 (2014) .................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)................................................................... 4, 7, 8, 10

*Watkins v. Simmons and Clark, Inc.*,
   618 F.2d 398 (6th Cir. 1980) ................................................................... 22

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
  571 F.3d 953 (9th Cir. 2009) ...................................................... 15

*Westways World Travel, Inc. v. AMR Corp.*,
  218 F.R.D. 223 (C.D. Cal. 2003) ................................................ 21

*Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*,
  473 U.S. 172 (1985) .................................................................. 19

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ................................................... 21

**Statutes**

15 U.S.C. § 1693(b) ....................................................................... 16

15 U.S.C. § 1693a(6) ..................................................................... 23

15 U.S.C. § 1693a(7) ..................................................................... 16

15 U.S.C. § 1693i .............................................................. 17, 18, 23

15 U.S.C. § 1693i(a) ...................................................................... 17

15 U.S.C. § 1693i(b) ...................................................................... 17

15 U.S.C. § 1693k(1) ............................................................... 16, 17

15 U.S.C. § 1693k(2) ............................................................... 16, 17

42 U.S.C. § 1983 (1996) .................................................................. 1

Cal. Bus. & Prof. Code § 17200 ..................................................... 24

Cal. Code Regs. tit. 15, § 3075.2(d) ................................................. 2

Cal. Penal Code § 2713.1 .......................................................... 2, 5, 7

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ........................................ 1

Electronic Fund Transfer Act, 15 U.S.C. §§ 1693 (2010), *et seq.* ........... *passim*

**Other Authorities**

12 C.F.R. Ch. II, Pt. 205, Supp. I, ¶ 20(b)(4)(2)(vi) ......................... 17

12 C.F.R. pt. 205 (2017) ............................................................. 16

12 C.F.R. § 205.20(b)(4) ............................................................ 17

Fed. R. Civ. P. 23 ........................................................... 4, 5, 7, 15

Fed. R. Civ. P.23(a) ............................................................. 3, 25

Fed. R. civ. P. 23(a)(1) .............................................................. 6

Fed. R. Civ. P. 23(a)(2) .................................................... 7, 8, 10

Fed. R. Civ. P. 23(a)(4) ............................................................ 11

Fed. R. Civ. P. 23(b) ..................................................... 3, 4, 14, 24

Fed. R. Civ. P. 23(b)(2) ...................................................... *passim*

Fed. R. Civ. P. 23(b)(3) ...................................................... *passim*

Fed. R. Civ. P. 23(b)(3)(A) ....................................................... 21

Fed. R. Civ. P. 23(b)(3)(A)-(D) .................................................. 21

Fed. R. Civ. P. 23(g) .............................................................. 13

Fed. R. Evid. 201 ................................................................... 6

L.R. 23-3 ........................................................................... 3

7A Wright, Miller & Kane, Federal Practice & Procedure § 1763
(3d ed. 2005) ....................................................................... 8

# I.    INTRODUCTION

Plaintiff Joe Rudy Reyes ("Plaintiff" or "Reyes") filed this putative class action against Defendants JPay, Inc. ("JPay"), Praxell, Inc. ("Praxell"), and Sunrise National Bank Association ("Sunrise Bank") (collectively "Defendants") for violations of the Fifth Amendment pursuant to 42 U.S.C. § 1983 (1996), the federal Electronic Fund Transfer Act, 15 U.S.C. §§ 1693 (2010), *et seq.* ("EFTA"), and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), along with common law claims for conversion, trespass to chattels, and an accounting. Compl. ¶¶ 184-242, ECF No. 1.

Traditionally, after serving one's time in a state prison system, the correctional facility would provide you with any remaining funds in your inmate trust account and any funds owed to you by the state via cash or check. Decl. of Mark A. Griffin in Supp. of Pl.'s Mtn. for Class Certification ("Griffin Decl.") Ex. 1. However, as the nation's prison systems began to privatize, for-profit businesses began providing food, clothing, riot gear, phone service, computers, and health care in prisons, and sometimes directly operated the correctional facilities themselves. One such "service" these companies offer correctional facilities is the issuance of prepaid debit release cards in lieu of a prisoner receiving their funds in cash or a check.

JPay provides myriad services to correctional facilities nationwide, including debit release cards. Defs.' Joint Mtn. to Compel Arbitration 3 ("Mtn. to Compel"), ECF No. 43. Praxell is a program manager for these prepaid debit release cards. *Id.* Sunrise Bank, in turn, is the sponsoring bank for JPay's prepaid debit release card programs, and it issues cards to Praxell and maintains the prepaid card holder accounts. *Id.* As part of a December 2, 2013 "Independent Sales Organization Agreement" ("Tri-Party Agreement") between the three Defendants, Sunrise Bank agreed to provide and issue the prepaid debit cards that are serviced by Praxell and marketed by JPay. Antinuke Sode in Supp. of Mtn. to Compel ("Sode Decl.") Ex. 7, ECF No. 43-4.

In 2014, Defendant JPay secured a bid from the state of California's Department of Corrections and Rehabilitation ("CDCR") to issue prepaid debit cards to those released from CDCR's custody and replace CDCR's cash-based return system. Sode Decl. ¶¶ 3-4. On July 30, 2014 CDCR and JPay entered into a contract whereby JPay (along with Praxell and Sunrise Bank) would issue prepaid debit cards to every prisoner released from a CDCR facility ("the CDCR Contract"). Griffin Decl. Ex. 2. Under the CDCR Contract, CDCR is to "utilize [JPay's] secure internet website to assign debit cards to Parolees" in order to provide "Release Funds" and "Trust Funds" to each released prisoner. *Id.* Beginning in October 2014, Defendants began issuing prepaid JPay Progress Cards ("JPay Card") to prisoners released from every facility in the CDCR system—over two dozen facilities in counties from San Diego to Del Norte. Griffin Decl. Ex. 3. at p. 69.

Since 1973, prisoners in the California correctional system who have served at least six months of incarceration are entitled to $200 upon their release, less the costs of clothing, if needed, and facility-provided transportation. Cal. Penal Code § 2713.1 (West). Colloquially referred to as "gate money," this $200 is "a sum of money intended for the rehabilitative purpose of assisting in an inmate/parolee's reintegration into society." Cal. Code Regs. tit. 15, § 3075.2(d). Under the CDCR Contract, the balance of a prisoner's inmate trust account, as well as any state-provided gate money, would be loaded onto a JPay Card. Griffin Decl. Ex. 2 at p. 1.

Each JPay Card is printed, packed, and shipped by the same vendor, along with accompanying instructions, and then mailed to JPay, which then ships them to CDCR facilities. Mtn. to Compel 3. These materials include a flyer stating that "Your release funds (gate money) have been applied to this card." Decl. of Robert Carter in Supp. of Mtn. to Compel ("Carter Decl.") Ex. 1, ECF No. 43-1. The flyer also states that the Card is "ready for immediate use." *Id.* Several days before a prisoner's release, an officer in CDCR's central Accounting Services Branch remotely activates and loads a

Card with "the amount of funds available in that inmate's trust account and included any state funds he was entitled to." Decl. of Teresa Stalter in Supp. of Mtn. to Compel ¶¶ 7-9 ("Stalter Decl."), ECF No. 43-3. Only upon release is the prisoner informed that the funds will be disbursed via JPay Card; prisoners are given no option to request or apply for the Card, reject the Card, or take their money in any other form. Decl. of Joe Rudy Reyes in Supp. Of Pl.'s Mt. for Class Certification ("Reyes Decl.") ¶¶ 4-7.

Plaintiff Reyes received a JPay Card. After serving nearly thirty years in CDCR's custody, Reyes was released from High Desert Prison in Susanville, California on Monday, January 16, 2017. Reyes Decl. ¶ 2. When he was released, he was told to sign a form. Reyes Decl. ¶ 3. The "Release Statement" form he signed (Ex. 3 to the Decl. of Robert Carter, ECF No. 43-1), lists the balance of Reyes' inmate trust account and the amount of gate money he was to receive: a total of $424.20. Reyes' Card, like all JPay Cards issued, was activated by CDCR personnel before he received it. *See* Decl. of Joe Rudy Reyes in Supp. Of Pl.'s Opp. Mtn. to Compel Arbitration ("Reyes MTC Decl."), ¶ 25, ECF No. 56.

On January 12, 2018, Reyes filed suit in this Court.[1] He brings this action on behalf of himself, and all others similarly situated, and now seeks,[2] pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), class and subclass certification

---

[1] Plaintiff's JPay Card was "frozen" a few days after he received it, and he could not regain access to his balance. Two months after the filing of this suit, CDCR issued him a check for $71.19. Plaintiff has not cashed this check. *See* Reyes Decl. ¶¶ 10-11.

[2] L.R. 23-3 requires the filing of a class certification motion within 90 days after *service* of a pleading purporting to commence a class action. Defendants were *served* with the summons and complaint on January 26, 2018. ECF Nos. 27, 28, & 30. Ninety days from that date is April 26, 2018. The [Proposed] Order Granting Joint Stipulation to Extend Initial Disclosure Conference and Class Certification Deadlines, ECF No. 41, erroneously stated that the deadline to move for class certification was April 12, 2018, ninety days after the *filing* of the Complaint on January 12, 2018.

of his Fifth Amendment, EFTA, and UCL claims.

## II.   LEGAL STANDARD FOR CLASS CERTIFICATION

Class certification is proper if Plaintiff satisfies the requirements of Rule 23(a) and at least one of the prongs of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Plaintiff must show that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Upon meeting these requirements, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Rule 23(b)(3) asks whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and whether the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiff seeks certification under both Rule 23(b)(3) and 23(b)(2).

The limited procedural nature of a motion for class certification circumscribes the scope of the Court's inquiry. The Supreme Court has recently described the inquiry as follows: "We [have] recognized … that 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' . . . '[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable.'" *Wal-Mart*, 564 U.S. at 350-51 (quoting *Gen. Tel. Co. of SW. v. Falcon,* 457 U.S. 147, 160 (1982)). While the Court

must conduct a rigorous analysis, in doing so it "is required to examine the merits of the underlying claim only inasmuch as it must determine whether common questions exist [or other elements of Rule 23 are satisfied]; not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011). Rule 23 exists to facilitate the efficient administration of justice and provide remedies to those for whom individual actions are not feasible, and Plaintiff easily satisfies its requirements.

## III.   THE PROPOSED CLASS

Plaintiff, on behalf of himself and all others similarly situated, moves the Court for certification of the following Class pursuant to Fed. R. Civ. P. 23(b)(3) and 23(b)(2):

> **Class:** All persons who, from applicable statutes of limitation through the present, upon their release from a California Department of Corrections and Rehabilitation facility, were given the balance of their inmate trust account and/or all or a portion of the funds owed to them under Cal. Penal Code § 2713.1 on a "JPay Progress Card," as issued and/or serviced by JPay, Inc., Praxell, Inc., and Sunrise Bank National Association.

Plaintiff, on behalf of himself and all others similarly situated, also seeks certification of the following Subclass:

> **Gate Money Subclass:** All persons who, from applicable statutes of limitation through the present, upon their release from a California Department of Corrections and Rehabilitation facility, were given all or a portion of the funds owed to them under Cal. Penal Code § 2713.1 on a "JPay Progress Card," as issued and/or serviced by JPay, Inc., Praxell, Inc., and Sunrise Bank National Association.

Plaintiff offers the following exclusions to both the Class and Subclass:

> Excluded from the Class and Subclass are JPay, Inc., Praxell, Inc., and Sunrise Bank National Association; their parents, subsidiaries, affiliates, officers and directors; any entity in which JPay, Inc., Praxell, Inc., and/or Sunrise Bank National Association have a controlling interest; all Rule 23(b)(3) class members who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members.

# IV.   ARGUMENT

## A.   The Proposed Class and Subclass Meet the Requirements of Rule 23(a): Numerosity, Commonality, Typicality, and Adequate Representation.

Because 1) tens of thousands of individuals are issued JPay Cards each year; 2) Plaintiff's claims rest on Defendants' single policy or practice of issuing JPay Cards pursuant to the CDCR Contract; 3) Plaintiff—like all Class and Subclass members—received a JPay Card; and 4) Plaintiff and his counsel will adequately represent the proposed Class and Subclass, Plaintiff has met the requirements of Fed. R. Civ. P. 23(a). The Class and Subclass should be certified.

### 1.   The Class and Subclass are Sufficiently Numerous to Render Joinder Impracticable.

Rule 23(a)(1) requires that the proposed Class be "so numerous that joinder of all members is impracticable." The rule does not set a minimum number of class members to meet Rule 23(a)(1), *In re Cooper Co. Inc., Sec. Litig.*, 254 F.R.D. 628, 633 (C.D. Cal. 2009), but when the number of class members exceeds forty, the numerosity requirement is presumptively met. *See In re NetSol Techs., Inc. Sec. Litig.*, No. CV 14-5787 PA (PJWX), 2016 WL 7496724, at *3 (C.D. Cal. July 1, 2016). In evaluating numerosity, "a court may draw a reasonable inference of class size from the facts before it." *Lynch v. Rank*, 604 F. Supp. 30, 36 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984), *opinion amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985). A court need not know the exact size of the putative class, "so long as general knowledge and common sense indicate that it is large." *In re STEC Inc. Sec. Litig.*, No. CV 09-8536-JVS MLGX, 2012 WL 6965372, at *4 (C.D. Cal. Mar. 7, 2012) (quoting *Perez–Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984)). In this case, publicly available data published by governmental entities demonstrates that the proposed classes satisfy the

numerosity requirement. *See* Griffin Decl. Ex. 3 at p. 67.[3]

Tens of thousands of people are incarcerated in the CDCR system, and each year over 35,000 prisoners are released. *Id.* at p. 46. Since Defendants began issuing JPay Cards, tens of thousands of CDCR prisoners have been released—and have received a JPay Card. *Id.* Similarly, CDCR prisoners spend an average of 3 years in custody—well beyond the minimum six months necessary to qualify for gate money under Cal. Penal Code § 2713.1. *See id.* Thus, the Class and Subclass are sufficiently numerous, and because joinder would be impracticable, numerosity is readily satisfied here.

### 2. Common Questions of Law and Fact Exist.

Rule 23(a)(2) requires that a class action raise "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the rule, "'even a single [common] question' will do." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (quoting *Wal-Mart*, 564 U.S. at 359); *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (reiterating rule). It is not necessary that members of the proposed class "share every fact in common or completely identical legal issues." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). Rather, the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). That Plaintiff must present common questions is not to say that the Court must answer in his favor; Plaintiff need not show at the class certification

---

[3] This Court can take judicial notice of the data on publicly available websites. *See* Fed. R. Evid. 201 (judicial notice proper where facts are not subject to reasonable dispute due to their ability to be accurately and readily determined from sources beyond question); *see also Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 199 n.18 (2008) (taking judicial notice of facts from a government website); *Michery v. Ford Motor Co.*, 650 F. App'x 338, 342 n.2 (9th Cir. 2016) (taking judicial notice of publicly available National Highway Traffic Safety Administration data).

stage that he will prevail on the merits. *See, e.g.*, *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466-67 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."); *Ellis*, 657 F.3d at 983 n.8 ("whether class members could actually prevail on the merits of their claims" is not a proper inquiry in determining "whether common questions exist."). Class suits that include requests for injunctive or declaratory relief, like this case, "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1763 at 226 (3d ed. 2005).

Plaintiff and the proposed Class members present common questions of fact. Every Class member received a JPay Card that was subject to the same CDCR Contract. *See* Griffin Decl. Ex. 2. Each Card was printed, packaged, and mailed by the same vendor and then given to each CDCR facility. Mtn. to Compel 3. Flyers stating that the Cards are loaded with a prisoner's gate money and ready for immediate use are also shipped with the Cards. Carter Decl. Ex. 1. Before every CDCR prisoner receives the Card, it is activated and loaded with their trust account balance and any gate money. *See* Stalter Decl. ¶¶ 7-9; Griffin Decl. Ex. 4. Plaintiff and the proposed Class members also present common questions of law, as detailed in the Complaint ¶ 178.

Because Plaintiff's claims present common contentions whose truth or falsity can be determined in one stroke, he has satisfied Rule 23's commonality requirement. *See* *Wal-Mart*, 564 U.S. at 350. In the instant case, the proposed Class and Subclass members allege common harms that arise from Defendants' uniform course of conduct: the issuance of the JPay Card to prisoners released from CDCR's custody. As the Ninth Circuit has observed, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005). "In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a

finding of commonality." *Id.* Thus, the common questions of law and fact raised by Plaintiff's claims will be answered by common evidence regarding Defendants' common conduct, even if each Class and Subclass member may experience the harm resulting from that conduct differently.

As Plaintiff alleges, when Defendants load a prisoner's inmate trust account balance and/or gate money onto a JPay Card, they affect a taking of property under the Fifth Amendment. Compl. ¶¶ 184-93. This practice is done pursuant to the CDCR Contract, and every class member receives a JPay Card. Thus, each Class Member's Fifth Amendment claim rest on the same "common core of salient facts." *Hanlon*, 150 F.3d at 1019. Fifth Amendment takings claims that rest on the "same core legal question," such as the constitutionality of a single government action or policy, meet the commonality requirement. *See, e.g.*, *Douglas R. Bigelow Tr. v. United States*, 97 Fed. Cl. 674, 678-79 (2011) (certifying class of landowners alleging trail usage notice constituted a taking pursuant to the Fifth Amendment).

Similarly, Plaintiff and the Class allege that Defendants' JPay Card program puts pre-activated, unsolicited cards in the hands of prisoners in violation of EFTA—this allegation is common to every Class member. Likewise, Plaintiff and the members of the Subclass allege that Defendants' JPay Cards condition the receipt of government benefits (gate money) on acceptance and use of the Card in violation of EFTA—that, too, is a question common to every Subclass member. Courts routinely find alleged EFTA violations to meet the commonality requirement. *See Shelby v. Two Jinns, Inc.*, No. CV15-3794-ABGJSX, 2017 WL 6347090, at *3 (C.D. Cal. Aug. 2, 2017) (whether unauthorized bank withdrawals violated EFTA "is a legal issue common to all Class members' claims."); *Jordan v. Freedom Nat'l Ins. Servs. Inc.*, No. CV-16-00362-PHX-DLR, 2016 WL 5363752, at *3 (D. Ariz. Sept. 26, 2016) (commonality and typicality met where "common thread running through the putative class is that all class members signed a similar Authorization Agreement that Jordan alleges violates EFTA.");

*O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 489 (N.D. Cal. 2011) (commonality satisfied where issue of whether defendant's practice of collecting loan payments via multiple EFT withdrawals in a single month violates EFTA).

Defendants' unconstitutional and unlawful issuance of JPay Cards was uniform as to all putative Class and Subclass members. *See* Mtn. to Compel 3 (Cards packaged and shipped to all CDCR facilities); Stalter Decl. ¶¶ 7-9 (Cards activated and loaded by CDCR); Carter Decl. Ex. 1 (mass-printed flyers state that Card is loaded with gate money and immediately usable). Thus, the Court need not determine the effect of the Card upon any individual Class member or undertake any other kind of individualized determination. *See Parsons*, 754 F.3d at 675 ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (citing *Wal-Mart*, 564 U.S. at 350). Accordingly, the questions presented by Plaintiff, the Class, and Subclass are sufficiently common to satisfy Rule 23(a)(2).

### 3.  Plaintiff's Claims Are Typical of The Claims of All Class Members.

Fed. R. Civ. P. 23(a) requires Plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "[T]he commonality and typicality requirements of Rule 23(a) tend to merge." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *General Tele. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). This requirement, like the commonality requirement, is evaluated with liberality. *Hanlon*, 150 F.3d at 1020. Typicality is satisfied if the representative plaintiff's claim stems from "the same course of conduct" as caused injury to other class members. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). When the same unlawful conduct is allegedly directed at or affects both the named plaintiff and the proposed class, typicality is usually satisfied, regardless of varying fact patterns which may underlie individuals' claims. *Ellis*, 657 F.3d at 984.

Where, as here, Defendants are alleged to have engaged in a common scheme relative to all Class members, there is a strong presumption that Plaintiff's claims are typical of the claims of absent Class members:

> We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct.

*Armstrong*, 275 F.3d at 869; *see also O'Donovan*, 278 F.R.D. at 492 (typicality met where same underlying conduct is alleged in EFTA violation). Here, the proposed Class includes all persons who received a pre-activated, unsolicited JPay Card that converted their personal property to a debit card, and the Subclass includes all persons whose government benefits (gate money) were conditioned on the receipt of the JPay Card. Both the Class and Subclass allege the same underlying conduct: the issuance of the JPay Card pursuant to the CDCR Contract.

Furthermore, Plaintiff is a member of the Class and Subclass he seeks to represent. *See* Reyes Decl. ¶ 5; Compl. ¶ 124. His injuries are the same type as those of the Class and Subclass, and he seeks the same relief that members of the classes would seek: statutory damages pursuant to EFTA for violations of Sections 1693i and 1693k(2), the difference between the value of cash and the JPay Card received, and any punitive damages allowed under law. Plaintiff's claims are typical because Defendants issued the same JPay Card to Plaintiff as they did to all other Class and Subclass members. *See Shelby*, 2017 WL 6347090, at *3 (typicality met where "the Complaint alleges Class members, including Plaintiff, were subjected to identical practices which resulted in the same statutory injury."). Plaintiff has satisfied the typicality requirement.

### 4.  Plaintiff Will Adequately Protect the Interests of the Class, and Counsel are Qualified to Litigate this Action.

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class" he seeks to represent. Fed. R. Civ. P. 23(a)(4). In evaluating

the adequacy of representation, "courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon*, 688 F.3d at 1031 (quoting *Hanlon*, 150 F.3d at 1020). With no conflicts of interest between Plaintiff and the Class, the adequacy requirement is met.

### a.   Proposed Class Representative is Adequate.

The final element of Fed. R. Civ. P. 23(a) requires that the proposed class representative "fairly and adequately protect the interests of the class," which requires the Court to "resolve two questions: '(1) do[es] the named plaintiff[] … have any conflicts of interest with other class members and (2) will the named plaintiff[] … prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020). Both prongs are met here.

Plaintiff's interests are the same as the interests of the other members of the proposed Class. Every Class member—including Plaintiff—was given a JPay Card pursuant to the same CDCR Contract. All seek injunctive relief that will eliminate the unlawful aspects of Defendants' JPay Card program, and each seek to recover statutory damages and other damages allowed under law. Given the identity of claims between Plaintiff and the members of the Class, there are no conflicting interests in this case, any potential differences in damages notwithstanding. *See Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975) (rejecting assertion of potential conflict due to damages as basis for denying certification, noting "the conflict, if any, is peripheral, and substantially outweighed by the class members' common interests"). Thus, class certification here is not defeated by "any divergence of interest among class members." *Id.* at 910.

Second, Plaintiff has been vigorously engaged in the litigation; from the filing of the complaint to the filing of the opposition to Defs.' Mtn. to Compel Arbitration, ECF No. 43, he has reviewed the materials filed with this Court and provided declarations as necessary. Reyes Decl. ¶¶ 15, 17; *see also* Reyes MTC Decl., ECF No. 56. Indeed,

Plaintiff exceeds the requirements for service in a representative capacity:

> The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim . . . and will be deemed inadequate only if she is 'startlingly unfamiliar' with the case. . . . It is not necessary that a representative 'be intimately familiar with every factual and legal issue in the case;' rather, it is enough that the representative understand the gravamen of the claim.

*Moeller v. Taco Bell Corp.,* 220 F.R.D. 604, 611 (N.D. Cal. 2004).

Furthermore, Plaintiff understands that his responsibilities as a Class Representative are to prosecute this case on behalf of the entire Class, Reyes Decl. ¶¶ 19-22, and Plaintiff has a long, demonstrated history of seeking justice on behalf others. He served as Chairman of the Inmate Advisory Council at High Desert Prison, where he successfully advocated on behalf of disabled prisoners. *Id.* ¶¶ 12-13. He continues to work with High Desert Prison officials to help prisoners access the support they need after years behind bars. *Id.* ¶ 13. Plaintiff has devoted his life to serving those released from CDCR's custody—the very constituency that comprises the proposed Class.

Because Plaintiff has no conflicts in representing his interests along with the interests of the proposed Class, and because he is qualified and prepared to vigorously prosecute this case, the fourth element of Fed. R. Civ. P. 23(a) is satisfied.

### b. Class Counsel is Adequate.

Plaintiff's selected counsel will also be able to prosecute this matter vigorously. Fed. R. Civ. P. 23(g) requires the Court to appoint counsel who will fairly and adequately represent the interests of the class. Though "there are no fixed standards by which 'vigor' can be assayed," counsel's competency and experience can establish adequacy. *Hanlon*, 150 F.3d at 1021. Here, Plaintiff's counsel assisted the Plaintiff in investigating and filing his claims, will devote the appropriate resources to this litigation, and have extensive experience with class action litigation.

Keller Rohrback L.L.P. ("KR"), is currently and diligently litigating similar cases

against other prison debit release card providers. *See Reichert v. Keefe Commissary*, 3:17-cv-05848-RBL (W.D. Wash.); *Brown v. Stored Value Cards, Inc.*, 3:15-cv-01370-MO (D. Or.). Moreover, KR's nationally recognized Complex Litigation Group has more than 30 years of experience successfully representing, *inter alia*, consumers and employees nationwide in many complex, cutting-edge class action cases. Griffin Decl. Ex. 5 (attaching Keller Rohrback firm résumé). KR has been selected as lead or interim lead counsel in numerous cases, including *Andrews v. Plains All American Pipeline, L.P.*, No. 15-4113 PSG (JEMx), ECF No. 257 at 28 (C.D. Cal. Feb. 28, 2017) (appointing KR as interim class counsel because attorneys "have applied their experience and resources to litigate their clients' claims and will serve well as class counsel."); *Jabbari v. Wells Fargo & Co.*, No. 3:15-cv-02159-VC (N.D. Cal. Jul. 8, 2017); *In re Syncor ERISA Litig.*, 227 F.R.D. 338 (C.D. Cal. 2005), *Garbaccio v. St. Joseph's Hosp. & Medical Ctr.*, No. 2:16-cv-02740-JMV-JBC (D. N.J. Mar. 6, 2018); *Sanzone v. Mercy Health*, No 4:16-cv-923-CDP (E.D. Mo. Aug. 4, 2016).

The Human Rights Defense Center ("HRDC") has been involved in prisoner rights cases across the United States and served as lead and co-counsel on issues ranging from consumer class actions and public records litigation to wrongful death and prison conditions cases. HRDC has extensive experience litigating against correctional facilities, public officials, and private actors, has specific expertise on issues related to the operation of prisons and jails, and understands the current scope of prisoners' rights litigation. Declaration of Sabarish Neelakanta ¶ 7.

Plaintiff will adequately protect the interests of the absent class members, and his attorneys should be appointed as Class Counsel.

## A.     The Class Is Maintainable Under Rule 23(b)(3).

In addition to satisfying the criteria of Rule 23(a), Plaintiff must demonstrate that the proposed Class can be maintained under any one of three scenarios set forth in Rule 23(b). Plaintiff seeks certification under Rule 23(b)(3), which requires that "[q]uestions

of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff satisfies both the predominance and superiority requirements.

### 1. Questions of Law or Fact Common to Class Members Predominate Over Any Questions Affecting Only Individual Members.

In the Ninth Circuit, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022. As stated in *Hanlon*: "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Id.* (citation omitted). Under Rule 23(b)(3), common issues need only predominate, as Rule 23 does not require the total absence of any individual issues. *In re Activision Sec. Litig.*, 621 F. Supp. 415, 429-30 (N.D. Cal. 1985). Under the predominance inquiry, a court must balance against any issues requiring individualized proof any questions of law or fact common to class members. *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009) (holding it is reversible error to "rely[] on [one factor] to the near exclusion of other factors relevant to the predominance inquiry."). "Predominance is a test readily met in certain cases alleging consumer … fraud," *Amchem*, 521 U.S. at 625 (citations omitted), especially those where standardized documents or conduct are the focal point of the analysis. *In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013) *cert. denied sub nom. US Foods, Inc. v. Catholic Healthcare W.*, 134 S. Ct. 1938 (2014) (predominance found in the absence of material differences in contract language).

The case at bar is especially appropriate for class action treatment, because there are no individual questions relating to liability—if the Court finds that one JPay Card issued pursuant to the CDCR Contract was pre-activated and unsolicited; a taking of

personal property at the hands of a state actor; or, for each Card loaded with state-issued gate money, an unlawfully conditioned means of receiving government benefits, then *all* JPay Cards issued pursuant to that CDCR Contract are unlawful. There are no individual inquiries necessary to resolve this case or which pose the kind of problems that are barriers to class certification. The legal issues concerning the violations of the Fifth Amendment, EFTA, and California's UCL predominate over other issues.

### a.   The 15 U.S.C. § 1693k(2) Claim Should Be Certified.

Plaintiff and members of the Subclass received their state-issued gate money on their JPay Cards, which Plaintiff and the Subclass will show violates 15 U.S.C. § 1693k(2) and EFTA's implementing regulations. 12 C.F.R. pt. 205 (2017).

EFTA protects individual consumer rights by providing "a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund ... transfer systems." 15 U.S.C. § 1693(b) (2010). The federal law is a "remedial statute accorded a broad, liberal construction in favor of the consumer." *Bultemeyer v. Fitness All., LLC*, No. CV–12–2619–PHX–LOA, 2014 WL 667585, at *3 (D. Ariz. Feb. 20, 2014) (citing *Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 350 (6th Cir. 2008)). EFTA bars the compulsory use of electronic fund transfers,[4] and 15 U.S.C. § 1693k(2) states that "No person may … (2) require a consumer to establish an account for receipt of electronic fund transfers with a particular financial institution as a condition of employment or receipt of a government benefit."

As Plaintiff and the Subclass will show, common questions of law and fact will establish Defendants' liability under this provision. As noted in *Daye v. Cmty. Fin. Serv.*

---

[4] 15 U.S.C. § 1693a(7) defines an "electronic fund transfer" as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account."

*Centers, LLC*, common questions predominate over individual ones where plaintiff can establish EFTA liability "by resolving one common question": whether each class member's loan contract requires electronic fund transfers to receive a loan in violation of 15 U.S.C. § 1693k(1). 313 F.R.D. 147, 181 (D. N.M. 2016) Similarly, in *O'Donovan v. CashCall, Inc.*, plaintiff alleged that defendant CashCall had conditioned the receipt of a loan on an electronic fund transfer in violation of 15 U.S.C. § 1693k(1). 278 F.R.D. at 495. The district court determined that "[w]hether CashCall's practice of requiring borrowers to consent to EFT payments is common to all borrowers who executed a CashCall Promissory Note, and CashCall has not articulated what individual issues would need to be addressed to resolve this claim." *Id.* at 496. Whether Defendants conditioned the receipt of government benefits on use of the JPay Card and violated section 1693k(2) can be resolved with common evidence: the CDCR Contract itself, as well as documents and testimony illuminating Defendants' practices. Thus, common issues predominate over individual issues related to the breach of contract claims.

### b.      The 15 U.S.C. § 1693i Claim Should Be Certified.

Similarly, EFTA prohibits the issuance of prepaid cards unless done so in response to a request or application by a consumer or as a renewal of, or in substitution for, an accepted card. 15 U.S.C. § 1693i(a).[5] Here, the JPay Cards were not issued in response to the customer's oral or written request; nor were they issued as a substitution or renewal of an existing card. Thus, Defendants violate EFTA unless the statute's

---

[5] Section 1693i applies only to cards that are "marketed to the general public." 12 C.F.R. § 205.20(b)(4). However, prepaid cards that are advertised to have some added benefit over other fund-receipt methods will be subject to EFTA. *See* 12 C.F.R. Ch. II, Pt. 205, Supp. I, ¶ 20(b)(4)(2)(vi) (agency interpretation noting that a hypothetical tax preparer that issues refunds on prepaid cards will be bound by EFTA "if the tax preparer promotes the ability to receive tax refund proceeds through a prepaid card as a way to obtain 'faster' access to the proceeds").

single exception applies. However, the distribution of unsolicited cards is sanctioned only if the card 1) is not validated and immediately usable at the time of issuance; 2) can be activated only in response to a request from the customer and after his or her identity is verified; 3) is accompanied by a complete disclosure of the consumer's rights and liabilities; and 4) includes a clear explanation of how the consumer can dispose of the card if he or she does not wish to validate it. 15 U.S.C. § 1693i(b).

Whether Defendants have violated section 1693i can be answered in simple yes-or-no questions as to the entire Class. Statutory claims like this one are easily classed— and routinely are. *See Shelby*, 2017 WL 6347090, at *4 (EFTA claims appropriate for class certification, as "[c]ommon factual and legal issues predominate because the single claim at issue here depends on Defendant's electronic withdrawal of funds from Class members' accounts, and whether the EFTA permits that conduct."); *Friedman v. 24 Hour Fitness USA, Inc.*, No. CV 06-6282 AHM (CTX), 2009 WL 2711956, at *11 (C.D. Cal. Aug. 25, 2009) (finding common questions of law and fact where plaintiffs allege lack of notice for preauthorized EFTs in violation of EFTA). To establish liability under section 1693i, Plaintiff and the Class will use common evidence to show that prisoners do not apply for or request their JPay Card; that all JPay Cards are pre-activated before they are handed to Class members, and no prisoner takes any steps to validate it for use; and that Defendants tout the benefits of the JPay Card in their promotional and education materials, and thus market the Card to the general public.

### c.  The Fifth Amendment Claim Should Be Certified.

Constitutional claims brought under the Fifth Amendment's Takings Clause are well-suited for class disposition. *See, e.g.*, *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1092 (E.D. Cal. 2012) (noting certification of class of homeless persons whose belongings were unlawfully taken or destroyed); *see also St. Bernard Par. Gov't v. United States*, 126 Fed. Cl. 707, 738-39 (2016), *rev'd on other grounds*, No. 2016-2301, 2018 WL 1882913 (Fed. Cir. Apr. 20, 2018) (certifying (b)(2) and (b)(3) classes of

property owners under Fifth Amendment); *Coleman through Bunn v. D.C.*, 306 F.R.D. 68, 88 (D. D.C. 2015) (certifying Rule 23(b)(3) class of homeowners challenging property tax lien). Indeed, Fifth Amendment challenges often attack specific policies or practices, and it is *because* Plaintiff and the proposed Class challenge a single practice or policy that their claims are most suited for class disposition. *See Parsons*, 754 F.3d at 676-80 (class certification appropriate for challenge to statewide policies and practices resulting in substantial harm); *Armstrong*, 275 F.3d at 868 (certifying class challenging "a system-wide practice or policy that affects all of the putative class members").

The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897), provides: "nor shall private property be taken for public use, without just compensation."[6] But if the public use requirement is satisfied, the Court must determine whether a "taking" of constitutional dimension has occurred and, if so, whether the government provided just compensation. *See Brown v. Legal Found. Of Washington*, 538 U.S. 216, 231-32 (2003); *see also Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985) ("The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation."). A state actor may take property by regulation or by appropriation. The latter constitutes a *per se* taking—that is, the state actor "has a categorical duty to pay just compensation" if it has appropriated private property. *Horne*, 135 S. Ct. at 2426. In *Horne*, the federal government, argued that its physical appropriation of raisin growers' raisins did not qualify as a *per se* taking because the growers were entitled to net proceeds from an eventual sale of the raisins. Due to this entitlement, the government argued, the growers

---

[6] The Fifth Amendment's prohibition against the government taking one's property without just compensation also applies to personal property. *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2425 (2015).

"retain[ed] the most important property interest" in the raisins, "so there [was] no taking in the first place." *Horne*, 135 S. Ct. at 2429. The Supreme Court rejected that argument: "[O]nce there is a taking, as in the case of a physical appropriation, any payment from the Government in connection with that action goes, at most, to the question of just compensation." *Id.* Put differently, "[t]he fact that the growers retain a contingent interest" in the raisins did "not mean there has been no physical taking." *Id.* The same reasoning fully applies here. Defendants physically appropriated Class members' money, and the extent to which the Card compensated them for that appropriation goes to just compensation, not to whether there was a taking.

The facts and evidence that Plaintiff will use to establish a *per se* taking under the Fifth Amendment will be the same for the Plaintiff and for the Class members he seeks to represent. The CDCR Contract itself—which gives Defendants the duty of maintaining and returning a prisoner's property upon his or her release from a CDCR facility—effectively transforms Defendants into state actors and they are thus bound by the Constitution.[7] That same CDCR Contract also authorizes Defendants to return a prisoner's property on a JPay Card pursuant to Defendants' terms and, as Plaintiff and the class will show, those terms apply across all CDCR facilities and require the issuance of JPay Cards to prisoners instead of cash. Plaintiff and the Class present common questions of law or fact as to their Fifth Amendment claim.

### 2. Class Treatment Is Superior to Other Methods of Adjudicating this Controversy.

The essence of superiority is whether class treatment best advances the interests

---

[7] Issuers of debit release cards (such as the JPay Card) are state actors, and the deprivation of property associated with the cards is the result of a governmental policy. *See Brown v. Stored Value Cards, Inc.*, 3:15-cv-01370-MO, ECF No. 136 (D. Or. June 7, 2017) (finding state actor requirements met and denying motion to dismiss Fifth Amendment Takings Clause claim against issuers of debit release cards).

of the Class members and the judicial system, and courts consider:

> (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and, (4) the likely difficulties in the managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). Here, in view of all these factors, class treatment is superior to the other methods of adjudicating this controversy.

### a.   Proposed Class Members Would Have No Interest in Individually Prosecuting of Separate Actions.

The first factor is the interest of each member in "individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). "This factor is most relevant where each class member has suffered sizeable damages or has an emotional stake in the litigation." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (C.D. Cal. 1996). Plaintiff's claims allege simple, *per se* violations: the JPay Card's very issuance contravenes sections 1693i and 1693k(2) of EFTA, and the conversion of each prisoner's personal property to a debit card constitutes a taking under the Fifth Amendment. No class member suffers greater injuries than the rest, and thus "no one member of the [c]lass has an interest in controlling the prosecution of the action." *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 240 (C.D. Cal. 2003). In the case at bar, as was the case in *Hanlon*, "[f]rom either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." 150 F.3d at 1023.

Furthermore, "[w]here damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001); *see also Shelby*, 2017 WL 6347090, at *4 ("considering the lack of actual damages and the EFTA's cap on statutory damages,

class resolution allows Class members to litigate claims that would otherwise be uneconomical to pursue separately."). Moreover, "[l]awsuits involving small recoveries arising for technical violations of statutes may be superior to individual litigation because the general public might not be aware of the violations." *Kinder v. Nw. Bank*, 278 F.R.D. 176, 185–86 (W.D. Mich. 2011) (certifying EFTA claim class and citing *Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980) (noting that, where the general public may be ignorant of the technical requirements of a statute, the class action suit could be "the greatest single benefit derived in an area of regulation in which the responsibility of policing falls principally on the shoulders of the private citizen and private counsel.")); *see also Daye*, 313 F.R.D. at 183 (internal quotations omitted) (certifying class for EFTA claim where "the proposed class members would not likely pursue relief on their own, because most class members would likely not even know their rights had been violated and would not be able to afford to retain competent counsel to pursue their rights.").

Here, the individual Class members' damages are relatively modest—the statutory damages that they are entitled to under EFTA, difference between the value of cash and a debit card, and any punitive damages allowed under law. If each released prisoner were to pursue these damages on an individual basis, litigation costs would dwarf their potential recovery—and where litigation costs exceed one's likely recovery, the class action is the superior method of adjudication:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617. The size and nature of the proposed Class members' damages weigh heavily in favor of certification here. *Hanlon*, 150 F.3d at 1023 (fact that cost of litigation is larger than potential recovery supported request for class certification). The

first factor of Fed. R. Civ. P. 23(b)(3) is thus met.

**b.    No Individual Cases Concerning the Controversy Presented Here are Underway.**

Counsel for Plaintiff are unaware of any pending cases against Defendants for their JPay Card program with CDCR. The absence of individual cases against Defendants thus underscores Plaintiff's contention that the claims presented here will only be litigated if they are litigated on a class basis.

**c.    Concentrating the Claims in this Forum is Desirable.**

A class action in this forum, where an adequate plaintiff and experienced and able legal counsel are pursuing the claims, is the superior means of resolving this dispute. The proposed Class includes thousands of prisoners released across California, some of whom may now live outside of California. Maintaining this case as a class action in this forum will guard against inconsistent results.

**d.    Unusual Difficulties Encountered in the Management of the Case Are Not Foreseeable.**

"[D]ismissals [of class actions] for management reasons, in view of the public interest involved in class actions, should be the exception rather than the rule." *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 78 F.R.D. 622, 628 (W.D. Wash. 1978). The exception is not present here. Identifying the members of the proposed Class and Subclass will be simple: Defendants claim that they "keep a careful internal record of who has been issued which card." ECF No. 43 at 10. As it is the issuance of the Card itself that demarcates class membership, identifying the proposed class members will not present an impediment.[8] Thus, there should be no unusual difficulties encountered in

---

[8] Cases seeking certification of EFTA claims finding otherwise are distinguishable. In *Ballard v. Branch Banking & Tr. Co.*, 284 F.R.D. 9, 16 (D.D.C. 2012), the district court denied class certification because plaintiffs failed to meet Rule 23(b)(3)'s superiority requirement. But in *Ballard*, plaintiffs alleged violations of EFTA's ATM

the management of the case justifying an exceptional application of this requirement.

## C.   The Class is Maintainable Under Rule 23(b)(2).

Pursuant to Rule 23(b), the Court must determine whether "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Class certification under Rule 23(b)(2) "requires 'that the primary relief sought is declaratory or injunctive.'" *Rodriguez*, 591 F.3d at 1125. "The rule does not require [the court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Id.*

Plaintiff's UCL claim[9] alleges that injunctive relief is necessary to prevent further

---

notice requirements—but could not easily identify the class members. *Id.* at 13 (individualized inquiry necessary as to whether class member used ATM for personal or business use, as ATM fee notice rule only applies to "consumer" ATM users). While section 1693i also only applies to "consumers," 15 U.S.C. § 1693i(a), and EFTA defines "consumers" as natural persons, 15 U.S.C. § 1693a(6), every prisoner handed a JPay Card is a "consumer" under. Similarly, in *Brown v. Wells Fargo & Co.*, No. CIV. 11-1362 JRT/JJG, 2013 WL 6851068 (D. Minn. Dec. 30, 2013), the court concluded that a class action was not the superior method of adjudication because of the difficulty in identifying potential class members. *Id.* at *5. But in *Brown*, Wells Fargo would need to subpoena up to 855 financial institutions for class member contact information. *Id.* Here, Defendants maintain that they possess "careful internal records" of cardholders, and to the extent they need additional information to notify class members, that information is housed in one place: with CDCR.

[9] The UCL proscribes practices which are unlawful, unfair or fraudulent. Cal. Bus. & Prof. Code § 17200. Once Plaintiff establishes a violation of either section of EFTA, he has also established a cognizable UCL claim. *See Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("By proscribing 'any unlawful' business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."). EFTA violations can serve as an underlying UCL violation. *de la Torre*

unlawful conduct and restrain Defendants from continuing to issue JPay Cards in contravention of federal and constitutional law, and that money damages alone would not afford adequate and complete relief. Thus, Plaintiff, the Class, and Subclass seek a uniform declaration that the issuance of JPay Cards violates their federal and constitutional rights and a permanent injunction enjoining Defendants from issuing them in CDCR facilities—precisely the type of "uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688 (citing *Rodriguez*, 591 F.3d at 1125). An injunction is appropriate here because the CDCR Contract, which runs through June 30, 2020, shows that Defendants have every intention of issuing JPay Cards to all CDCR prisoners going forward, and will continue to act pursuant to it in ways generally applicable to all members of the Class and Subclass. "Rule 23(b)(2) permits class actions or declaratory or injunctive relief where the party opposing the class has acted or refused to act on grounds generally applicable to the class. Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." *Amchem*, 521 U.S. at 614 (internal quotations omitted). Hence, the requirements of Rule 23(b)(2) are met.

## I.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court certify the proposed Class and Subclass pursuant to Fed. R. Civ. P. 23(a), 23(b)(3), and 23(b)(2).

DATED this 26th day of April, 2018.

KELLER ROHRBACK L.L.P.

By *s/Lisa Faye Petak*

---

*v. CashCall, Inc.*, 56 F. Supp. 3d 1073, 1091 (N.D. Cal.), *on reconsideration*, 56 F. Supp. 3d 1105 (N.D. Cal. 2014) (granting summary judgment on UCL claim where plaintiff also establishes EFTA claim).

Lisa Faye Petak (CA 300914)
lpetak@kellerrohrback.com
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Phone: (805) 456-1496
Fax (805) 456-1497

KELLER ROHRBACK L.L.P.
Mark A. Griffin (*Pro Hac Vice*)
mgriffin@kellerrohrback.com
Laura R. Gerber (*Pro Hac Vice*)
lgerber@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Phone: (206) 623-1900
Fax (206) 623-3384

THE HUMAN RIGHTS DEFENSE CENTER
Sabarish Neelakanta (Pro Hac Vice)
sneelakanta@humanrightsdefensecenter.org
Daniel Marshall (Pro Hac Vice)
dmarshall@humanrightsdefensecenter.org
Masimba Mutamba (Pro Hac Vice)
mmutamba@humanrightsdefensecenter.org
P.O. Box 1151
Lake Worth, FL 33460
Telephone: (561) 360-2523
Facsimile: (866) 228-1681

*Attorneys for Plaintiff and The Class*